[Crim. No. 1318.   Third Appellate District.—February 16, 1934.]

THE PEOPLE, Respondent, v. HARRY W. O'TOOLE, Appellant.

J. C. Stoller and O. C. Parkinson for Appellant.

U. S. Webb, Attorney-General, and Jess Hession, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was convicted by a jury of the crime of grand theft, accomplished by stealing from E. C. Clarenbach the sum of $375. It is claimed the judgment is not supported by the evidence for the reason that no one testified to having actually seen the defendant take the money, and because the identical currency was not identified. There is no merit in the appeal. Reading the record leaves no doubt of the guilt of the defendant. There is ample evidence to support the verdict and judgment.

Mr. Clarenbach was a tractor mechanic who lived in Stockton. September 27, 1933, he sold a tractor, receiving as part payment therefor the sum of $250 in greenbacks. With this money on his person he spent the afternoon and night drinking and gambling. He won $125 at gambling. He then had $383, consisting chiefly of 20-dollar bills, together with some change in silver coins.

About 5 o'clock on the morning of September 28th, in company with a friend by the name of Walker, he entered the North Hunter Street Saloon in Stockton, where they were well known. Walker persuaded Clarenbach to deposit his roll of greenbacks with Fiscus, the bartender. He left with him $375 in currency taking a signed receipt therefor. Walker soon went away. After remaining about the saloon for a couple of hours, Clarenbach went out in search of his automobile, which he had parked near by. At the corner of Market and Center Streets he met the defendant in company with two itinerant friends. One of them was named Williams, with whom he had slept the preceding night at

the Salvation Army barracks. The defendant had no money. He had known Williams only three days. He borrowed fifty cents from Williams on the assertion that "he was broke." During the time he was in Stockton he lived on charity and displayed no evidence of having any money.

It was about 7:30 on the morning of September 28th when Clarenbach met the defendant and his companion. The defendant begged for money with which to buy his breakfast. Clarenbach invited him to go with him and offered to buy him a meal. They went together to a restaurant and Clarenbach paid for the meal. They then returned to the place where the defendant's companions sat, and Clarenbach and the defendant soon left together, going toward the North Hunter Street Saloon. Half an hour later the defendant returned to the place where his associates still sat upon the running-board of an automobile, and boasted of having robbed Clarenbach. Williams testified in that regard: "O'Toole came back and flashed the money under our nose. He said he took it—took it as easy as taking sugar from a baby." The defendant then started out on a profligate spending of money, carefully avoiding the North Hunter Street Saloon. He flourished money about, buying drinks for many and offering a 20-dollar bill from which to pay for a package of cigarettes. He carelessly thrust currency in nearly every pocket of his clothing.

Fiscus, the bartender, testified that Clarenbach and Walker came into his place of business about 5 o'clock on the morning of September 28th, and that a roll of $375 in greenbacks was deposited with him, for which he gave a signed receipt. The receipt was offered in evidence. He said that Walker soon left the place, but that Clarenbach remained for a couple of hours and then went away; that he returned about 8 or 8:30 that morning in company with the defendant, who stood by his side at the bar when the roll of bills was returned to Clarenbach, who placed it in his left-hand shirt pocket. He then treated the defendant and several other bystanders, paying for the drinks with some silver which he had retained. The defendant bought no drinks and offered to treat no one. Within a few minutes after the return of his money, Clarenbach sat down and, resting his head on a card table, he went to sleep. The defendant soon went away.

Between 8:30 and 9 o'clock Clarenbach's friend Walker returned to persuade him to go to work. He found him asleep at the table and discovered that his money was gone. Having been present when the money was deposited with the bartender, he asked Fiscus where it was. Fiscus told him he had returned the money and that so far as he knew it was in Clarenbach's pocket. After a thorough search for the money it was assumed that he had been robbed. Clarenbach testified that the bartender then said: "You been robbed . . . That fellow, . . . Mr. O'Toole has taken it and left."

At 2 o'clock that afternoon, the defendant was arrested in the Webber Saloon. He was drinking and spending money lavishly. He then had $217 in currency which was distributed among nearly all the pockets in his clothing. The money which he still retained included seven 20-dollar bills. In attempting to account for his sudden acquisition and liberal distribution of currency, he told a very improbable and conflicting story. He said he had worked in the woods and cared for a sick man in Oregon and that he brought with him to Stockton $125 and that he had won $300 at gambling the night of September 27th. He did not remember what sort of a gambling game he had played. He denied that he was at the North Hunter Street Saloon the previous night. He inferred that he had never met Clarenbach. He said that he slept the night before either at a Jap's or in the park. In the transcribed statement which he made to the officers immediately after his arrest, he said: "When you were arrested you had considerable money? A. I have. Q. Where did you get it? A. I earned it. . . . Q. Were you at . . . North Hunter Street? . . . A. I don't remember. . . . Q. Did you see Mr. Clarenbach here, had you seen him before? A. I can't recall him. . . . Q. Where did you stay last night? A. Well, I don't remember. Might have stayed down to the Jap's, or I might have stayed over in the park."

The defendant became a witness at the trial in his own behalf. He then admitted borrowing the half dollar from his friend Williams, and sleeping with him at the Salvation Army barracks the night before his arrest. He also admitted begging for and eating breakfast with Clarenbach, and subsequently going with him to the saloon where he

stood by his side and witnessed the return of his roll of greenbacks. He acknowledged seeing Clarenbach place the roll of bills in his left-hand shirt pocket. He also admitted drinking with him repeatedly, but acknowledged that he bought no drinks himself. He said, regarding his visit to the saloon in company with Clarenbach, when he recovered his money: "I drank gin. When I thought I had enough, I excused myself and left."

The foregoing circumstances, including his admission to his companions that he had taken the money from Clarenbach "as easy as taking sugar from a baby"; his sudden acquiring and lavish expenditure of currency, including a large number of 20-dollar bills, immediately after he had been compelled to eat and sleep as an object of charity; the improbable and conflicting story which he told to account for his possession of so large a sum of money; his presence in the saloon and knowledge of the return of the money to Clarenbach, and his opportunity for securing the currency while the owner was asleep, together with the numerous conflicting and improbable statements which he made indicating guilty conscience and warranting an assumption that he had been successfully impeached, furnishes ample evidence to support the verdict and judgment, and leaves no doubt of the defendant's guilt.

The judgment and the orders are affirmed.

Plummer, J., and Pullen, P. J., concurred.